UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONI RAE O'CONNELL,

        Plaintiff,

v.                                                                                Case No:    6:18-cv-1760-Orl-EJK

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIBs"). The Court has reviewed the record, including the decision of the administrative law judge ("ALJ"), the administrative record, and the memorandum of the parties. After due consideration, the Commissioner's final decision is affirmed, pursuant to sentence four of 42 U.S.C. § 405(g).

### I.    BACKGROUND

On February 19, 2015, Plaintiff filed an application for DIBs, alleging disability due to three hemicolectomy surgeries, the removal of three large polyps, three different hernia repairs, her involvement in two car accidents, ruptured discs in her neck, lower back pain, headaches, pain in her arms, and difficulty balancing. (Tr. 134.) The Commissioner denied Plaintiff's claims initially and on reconsideration. (Tr. 141, 165.) After an administrative hearing (Tr. 82–118), the ALJ issued a decision finding Plaintiff not disabled (Tr. 18–42). Plaintiff submitted additional evidence to the Appeals Council (two opinions from Aleksander Komar, M.D., and one opinion from Devin Datta, M.D.), but it nevertheless did not find that Plaintiff's written exceptions

provided a basis for changing the ALJ's decision, and thus, declined to assume jurisdiction. (Tr. 1–2.) Plaintiff now appeals, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

An individual is considered disabled and entitled to disability benefits if the person is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(B). In evaluating a disability claim, the Commissioner must use the following five-step sequential analysis:

1. If the applicant is working, the claim is denied.

2. If the impairment is determined not to be severe—i.e., if the impairment or combination of impairments does not significantly limit the individual's physical or mental ability to do basic work—then the claim is denied.

3. If the impairment or combination of impairments meets or medically equals one of the specific impairments listed in the regulations, then the claimant is entitled to disability benefits. If not, then the Commissioner proceeds to step four.

4. If the claimant has the residual functional capacity ("RFC") to perform past work, then the claim is denied.

5. If the claimant cannot perform past work, then the Commissioner must determine whether there is substantial work in the economy that the claimant can perform. If so, the claim is denied.

*See* 20 C.F.R. §§ 404.1520–404.1576.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 11, 2013. (Tr. 24.) At step two, the ALJ found that Plaintiff was severely impaired by a combination of cervical disc disease, cervicalgia, lumbar disc disease, headaches, status post hemicolectomy and hernia repair, obesity, right shoulder degenerative changes, and hypertension. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. (*Id.*) Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to do the following:

> Perform light work (lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours total in an 8-hour workday; sit for 6 hours total in an 8-hour workday) as defined in 20 CFR 404.1567(b) except the claimant can frequently reach (waist to chest with both arms/hands, reach above shoulder with both arms/hands, handle with both hands, and finger with both hands/fingers. She can occasionally tolerate exposure to wetness and/or humidity, vibration, and proximity to moving, mechanical parts. [Plaintiff] must avoid exposure to working in high exposed places.

(*Id.*) The ALJ concluded his analysis at step four, finding that Plaintiff could perform her past relevant work as a bookkeeper, editor/school photograph[er], and purchasing agent. (Tr. 36.)

### III. SCOPE OF JUDICIAL REVIEW

On judicial review, a Court may determine only whether the ALJ correctly applied the legal standards and if the ALJ's findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997)). A Court may "not reweigh the evidence or substitute [its] own judgment for that of the agency." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 683 (11th Cir. 2019) (citing *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

The Eleventh Circuit defines "substantial evidence" as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 774 (11th Cir. 2019) (citing *Lewis*, 125 F.3d at 1439). A Court determines whether substantial evidence exists by considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Lynch v. Astrue*, 358 F. App'x 83, 86 (11th Cir. 2009). "Even if the evidence preponderates against the [Commissioner's] findings, [the Court] must affirm if the [Commissioner's] decision is supported by substantial evidence. *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017) (citing *Crawford*, 363 F.3d at 1158–59).

## IV. DISCUSSION

Plaintiff argues that the Appeals Council committed reversible error by failing to remand the case to the ALJ in light of the newly submitted opinions from Aleksander Komar, M.D., and Devin Datta, M.D. (Doc. 22 at 28.) Plaintiff also argues that the ALJ erred by not properly considering the findings of Cynthia Kimble, M.D., as to the credibility of Plaintiff's subjective complaints and manipulative abilities, and not factoring into Plaintiff's RFC the findings of Craig Nielsen, M.D., as to Plaintiff's ability to ambulate. (*Id.* at 38–42.) Plaintiff also argues that the ALJ assigned improper weight to the opinion of Dr. Nielsen. (*Id.* at 41–42.)

### A. Newly Submitted Evidence to Appeals Council

Plaintiff argues that the Appeals Council should have remanded the case to the ALJ in light of the newly submitted opinion evidence from Drs. Komar and Datta. (Doc. 22 at 30.) Dr. Komar's opinions are dated February 19, 2017, and February 19, 2018, while Dr. Datta's opinion is dated January 31, 2018. (*Id.* at 28–29.) Plaintiff posits that remand was warranted because the opinions were new, material, and related to the period before the hearing, Plaintiff goes on to argue that she

had good cause for not timely submitting the evidence to ALJ, and there was a reasonable probability that the evidence would have changed the outcome of the ALJ's decision. (*Id.* at 30.) The Commissioner responds that Dr. Komar's 2017 opinion was not new, and Plaintiff did not demonstrate good cause for failing to submit the opinion earlier. (*Id.* at 35.) As to Dr. Komar's February 2018 opinion and Dr. Datta's January 2018 opinion, the Commissioner argues that they are not material because the opinions were inconsistent with the doctors' own treatment records and records from other treating physicians. (*Id.* at 36.)

Generally, a "claimant is allowed to present new evidence at each stage of [the] administrative process." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). However, "the Appeals Council is not required to explain its rationale for denying a request for review," even if it considers new evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014). When new evidence is presented, the Appeals Council must first determine whether the claimant had good cause for not submitting the evidence five days or more before the hearing with the ALJ. 20 C.F.R. § 404.970(b).[1] If the Appeals Council finds good cause, then it "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Mitchell*, 771 F.3d at 784; *see also* 20 C.F.R. § 404.970(a)(5).[2]

---

[1] This requirement has been in effect since May 1, 2017. 20 C.F.R. § 404.970(b); *see also* 81 Fed. Reg. 90987-01 (Dec. 16, 2016).

[2] In the instant case, the Appeals Council required Plaintiff to demonstrate good cause for why he failed to submit the new evidence earlier. (Tr. 1–2.) Plaintiff posits that the Appeals Council never stated that Plaintiff did not have good cause for belatedly submitting the evidence. (Doc. 22 at 30.) This argument has merit because the Appeals Council stated in its denial of review that the opinion evidence of Drs. Komar and Datta would not have changed the outcome of the ALJ's decision (Tr. 2), as required under 20 C.F.R. § 404.970(a)(5). As such, the Appeals Council decision indicates that it found good cause for the belated submission of the doctors' opinion evidence.

"Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1321 (11th Cir. 2015)). The evidence is new if it is submitted to the Appeals Council after the ALJ's decision. *See Washington*, 806 F.3d at 1321. "New evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision.'" *Id.* (quoting 20 C.F.R. § 404.970(b)). Section 404.970(b) delineates what is considered a good cause basis for failing to provide the evidence to the ALJ.

The parties do not dispute that the opinions of Drs. Komar and Datta relate to the time period before the ALJ's decision (*see* Doc. 22 at 28–37), and the Court finds that the opinions are new, as they were submitted for the first time before the Appeals Council (Tr. 2).[3] Thus, the remaining issues are whether the opinions are material and whether the ALJ's decision is now contrary to the greater weight of the evidence.

Plaintiff argues that the opinions by Drs. Komar and Datta have a reasonable probability of changing the ALJ's decision. (Doc. 22 at 32.) Though she does not directly state this, it appears that she is relying on the fact that both doctors are examining physicians and, as such, are generally entitled to more weight than a non-examining physician.[4] (Doc. 22 at 32.) It is true that "the opinions of examining physicians are given more weight than non-examining physicians." *Flowers*

---

[3] The Commissioner argues that Plaintiff does not offer a compelling reason why she was unable to submit the February 2017 opinion before the ALJ. (Doc. 22 at 33.) The Commissioner explains that Dr. Komar's 2017 opinion predates the June 15, 2017 hearing and thus she should have offered it beforehand. This argument appears to relate to whether Plaintiff had good cause for presenting this opinion evidence for the first time before the Appeals Council, which, based on the findings explained in note 2, *supra*, is not an issue on judicial review here.

[4] Based on the record, it appears there were only two opinions before the ALJ at the time she drafted the opinion at issue—the opinion of Cynthia Kimble, M.D., and the opinion of Craig Nielsen, M.D. (Tr. 34 –35.) Dr. Kimble was a non-examining physician, while Dr. Nielsen was a one-time examining physician. (Doc. 22 at 15, 19.)

*v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 740 (11th Cir. 2011) (citing §§ 404.1527(d)(1)–(2), 416.927(d)(4)). This principle, however, does not preclude an ALJ from discounting the examining physician's opinion for good cause. *See id.* at 742 ("[A]lthough an ALJ generally gives . . . examining physicians' opinions more weight [than a non-examining physician], here the ALJ was not required to do so" since he articulated good cause for assigning little weight to the opinion). This is the crux of the Commissioner's argument.

The Commissioner responds that the opinions of Drs. Komar and Datta did not have a reasonable probability of changing the ALJ's decision because good cause existed for discounting the opinions. (Doc. 22 at 34.) Both opinions, according to the Commissioner, use the disfavored "check box"/"fill-in-the-blank" form and are inconsistent with the doctors' own medical records or records from Plaintiff's other treating physicians. (*Id.*) The Court will address the opinions in turn.

### i. Dr. Komar: Examining Physician

Dr. Komar is a general surgeon whom Plaintiff visited on several occasions from December 2013 to November 2015 for removal of a polyp in her colon and for hernia repair. (Tr. 1012, 1031, 1020.) Dr. Komar performed the surgery to remove the polyp on January 16, 2014, and the two hernia repairs on June 12, 2014, and January 22, 2015. (Tr. 869, 870, 877.) The last time Plaintiff saw Dr. Komar was on November 15, 2015, when she complained to him about abdominal pain. (Tr. 1075.) At the last appointment, Dr. Komar diagnosed Plaintiff with abdominal pain but found that she was not getting another hernia. (Tr. 1076.)

On February 19, 2017, Dr. Komar completed a physical restrictions test representing his impression of Plaintiff's physical limitations since January 14, 2014. (Tr. 119.) Dr. Komar noted he did not believe Plaintiff was malingering or exaggerating her symptoms. (Tr. 122.) Thus, he

found that Plaintiff had the following restrictions due to her hernia mesh implant pain and irritable bowel syndrome ("IBS") symptoms: she can sit for 30 to 60 minutes without interruption; she can stand or walk for 20 to 30 minutes at a time; in an 8-hour work day she should sit for 5 hours, stand or walk for 2 hours, and either lie down or recline for 1 hour a day; she will be off task 15% of the day; she should use a walker for balance; she can lift 5–10 pounds frequently and 10–20 pounds occasionally; she can never climb, stoop, crouch, kneel, or crawl but can occasionally balance; her ability to conduct fine finger manipulation, see, hear, speak, or feel are not affected by her impairments, but she will be only able to reach above her head 10% of the day and push and pull 20% of the day; and she can repeatedly use her hands but not her feet. (Tr. 119–21.)

Dr. Komar also opined that while changing positions may be helpful for Plaintiff, it would ultimately be painful for her because of her mesh implant. (*Id.*) Moreover, because Plaintiff had three abdominal surgeries, suffers from IBS, and has a mesh implant, she will need to lie done once a day for about 30 to 60 minutes. (*Id.*) Dr. Komar also opined that Plaintiff will miss work 2 times a month and her job should not be at a place with unprotected heights, moving machinery, or vibration, though she could handle a place with extreme temperatures. (*Id.* at 120–21.) Her prescription medications, Percocet and Valium, will affect her ability to drive, operate equipment, and be alert because it will cause her drowsiness. (Tr. 121.) Dr. Komar found that Plaintiff can tolerate low stress. (*Id.*)

A year later, on February 19, 2018, Dr. Komar completed a "Gastroparesis/Diverticulitis Medical Assessment Form," which discussed the impact that Plaintiff's IBS has had on her since January 14, 2014. (Tr. 8.) Therein, Dr. Komar opined she would be off task 15% of the time while at work. (*Id.*) Dr. Komar also stated that she will be unable to perform routine, repetitive tasks at a consistent pace, detailed or complicated tasks, or fast paced tasks; she can, however, have

frequent interaction with her co-workers, supervisors, and the public. (*Id.*) Plaintiff also had the following restrictions: she cannot walk more than 8–10 blocks without rest or severe pain; she can continuously sit and stand for 30 minutes at a time before needing to walk, stand or lie down; she can stand for 30 minutes at a time before needing to sit or lie down; she can sit for about four hours and stand or walk for 2 hours; she can never lift 50 pounds, occasionally 10–20 pounds and frequently lift less than 10 pounds. (Tr. 9.) Dr. Komar also indicated that Plaintiff would be absent from work about four days a month. (Tr. 10.) Plaintiff would need a job that has a restroom readily accessible to her and would take 5–10 minute bathroom breaks about five times a day. (Tr. 9.)

Upon review, the Court finds that the Commissioner's position that there is no reasonable possibility that Dr. Komar's opinions would change the ALJ's decision has merit. As the Commissioner correctly points out, Dr. Komar's opinions are "check box"/"fill-in-the-blank" forms that courts in this District disfavor. Such forms, such as the assessment forms completed by Dr. Komar, "have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009); *see also Florio v. Comm'r of Soc. Sec.*, No. 2:15-cv-548-FtM-CM, 2017 WL 344188, at *4 (M.D. Fla. Jan. 24, 2017) (finding that substantial evidence supports the ALJ's decision to reject a physician's opinion because, *inter alia*, the physician used a "checklist" opinion without providing any context or explanation for his opinion); *Provenza v. Commr of Soc. Sec.*, No. 2:15-cv-432-FtM-CM, 2016 WL 3475641, at *7 (M.D. Fla. June 27, 2016) (reaching the same result as *Florio*). Dr. Komar references Plaintiff's IBS and "hernia mesh pain,"[5] when explaining how he determined Plaintiff's limitations, without

---

[5] Neither IBS nor hernia mesh pains were conditions Plaintiff cited as a basis for her disability (Tr. 134), nor were they conditions that the ALJ found severely impacted Plaintiff at step two (Tr. 24).

providing insight into how these conditions affect Plaintiff. (Tr. 8, 119.) "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Dr. Komar's opinions are devoid of explanations as to how he determined Plaintiff's limitations, and such explanations would be especially important here because the opinions were rendered over two years after Dr. Komar ceased treatment of Plaintiff.

Second, the Court agrees with the Commissioner's argument that Dr. Komar's opinions are inconsistent with the medical record. (Doc. at 36.) In support, the Commissioner points to treatment notes from Nitin Jain, M.D., Plaintiff's primary care physician, and Dr. Komar. (*Id.*) Both doctors found that Plaintiff was doing well after her surgeries (Tr. 444, 1080), and subsequent abdominal examinations did not reveal anything out of the ordinary (Tr. 424, 909, 915, 1076, 1090, 1114, 1190, 1194, 1285, 1289, 1293). This contradicts Dr. Komar's finding with regard to Plaintiff's ability to do postural activities (climb, stoop, crouch, kneel, or crawl). (Tr. 120.) Additionally, Plaintiff's February 2017 physical exam and treatment notes from her treating physicians indicate that she had normal grip and fine finger movement (Tr. 902, 909, 943, 948, 994, 114, 1211), contradicting Dr. Komar's opinion that she can push and pull her hands only 20% of the day (Tr. 8). Finally, Plaintiff reported that she tries to walk 2 miles a day (Tr. 1250), which is a longer distance than the 8–10 blocks Dr. Komar opined Plaintiff could walk (Tr. 9). In light of the check box form and the contradictions between Dr. Komar's opinions and the treatment notes, it is unlikely that the opinions would change the ALJ's decision and are thus not material. As such, the Appeals Council did not err by refusing to remand the case to the ALJ in light of the new opinion evidence from Dr. Komar.

### ii. Dr. Datta: Examining Physician

Plaintiff was referred to Dr. Datta, an orthopedic surgeon, for more extensive treatments on her neck and back pain. (Tr. 1103.) The record indicates that Plaintiff saw Dr. Datta twice: the first time on May 27, 2016, and again on August 22, 2016. (Tr. 1185, 1193–95.)

On January 31, 2018, Dr. Datta completed a "Physical Restrictions Evaluation," indicating his impression of Plaintiff's limitations following her car accident on May 30, 2014. (Tr. 14.) Like Dr. Komar, Dr. Datta did not find any evidence that Plaintiff was malingering or exaggerating her symptoms, and ultimately found that her "severe NFS at C5/6"[6] would reasonably produce her subjective symptoms. (Tr. 17.) Dr. Datta opined that Plaintiff could sit for 30–60 minutes and stand or walk for 20–30 minutes without interruption. (Tr. 14.) In an 8-hour workday, Plaintiff does not need to lie down,[7] but should sit for 4 hours and stand or walk for 4 hours; her condition[8] will produce both good days and bad days, impacting the amount of time she is able to sit, stand, or walk; she does not need an assistive device for walking or balancing; she can never climb, stoop, crouch, kneel, or crawl but can occasionally balance. (Tr. 14–15.) Dr. Datta also indicated Plaintiff cannot sit in front of a computer screen for more than 30 minutes at a time. (Tr. 14) Based on Plaintiff's complaint of lower back pain while using her left foot, Dr. Datta noted that Plaintiff cannot operate foot controls. (Tr. 16.)

As to Plaintiff's arm and hand manipulation, Dr. Datta made the following assessments: she can lift 10 pounds frequently, and 20 pounds occasionally; she can reach over her head and do fine finger manipulation 25% of the day, can feel with her hands 95% of the day, and can push or

---

[6] NFS stands for "neural foraminal stenosis." This is a compression of the spinal nerve.
[7] Specifically, Dr. Datta wrote "patient doesn't lay down if workday." (Tr. 14.) It is unclear whether Dr. Datta opined as set forth above, or whether Plaintiff told Dr. Datta that she does not lie down during an 8-hour workday.
[8] Dr. Datta does not specify a condition. (Tr. 15.)

pull with her hands 50% of the day; and she can repetitively use her hands over an 8 hour work day. (Tr. 15–16.) Additionally, Plaintiff's unspecified medication would affect her ability to operate machinery (Tr. 16.)

Dr. Datta noted that Plaintiff would miss work two to three times a month due to "chiro" and "massage (medical\ [*sic*]" appointments and would be off task 25% of the time. (Tr. 15.) Plaintiff cannot be in a stressful work environment because she is prone to headaches, and she cannot work in a place with a lot of vibration. (Tr. 16.)

The Court also finds that there was not a reasonable probability that Dr. Datta's opinion would have changed the ALJ's decision. Just like Dr. Komar, Dr. Datta used a "check box"/"fill-in-the-blank" form when describing Plaintiff's condition. In fact, Dr. Datta's opinion is a quintessential example of why such forms are generally disfavored. Though the form prompted the reviewer to provide medical conditions supporting a limitation, Dr. Datta failed to indicate a condition or medical basis for his findings about Plaintiff's ability to stand, walk, sit, lift items, perform postural activities, reach above her head, perform fine finger manipulation, feel with her hands, push and pull with her hands, necessary environmental restrictions, or what medications would impact her ability to operate machinery. (Tr. 14–18.) The only medical findings that Dr. Datta specified werw "chiro, massage (medical\" for why Plaintiff would be out of work two to three times a month, and Plaintiff's subjective complaint of lower back pain as to why she is unable to operate machinery. (*Id.*) There is nothing to inform the Court as to how Dr. Datta ascertained Plaintiff's limitations; consequently, it is conclusory and has limited probative value. *See Hammersley*, 2009 WL 3053707, at *6; *Florio*, 2017 WL 344188, at *4; *Provenza*, 2016 WL 3475641, at *7.

Additionally, the Commissioner points out that Dr. Datta's opinion is not consistent with treatment notes from Plaintiff's primary care physician and chiropractor. While those records indicate that Plaintiff has a limited range of motion in her neck, she otherwise had normal muscle strength, posture, sensation, and reflexes (Doc. at 36; Tr. 424–25, 427–28, 436, 439, 442, 445, 460, 463, 465, 470, 473, 883–84, 896, 901, 921, 928, 942, 947). Further, Plaintiff reported to a physician on January 25, 2017 (during the relevant period of Dr. Datta's opinion) that she tried to walk two miles per day. (Tr. 1250.) These medical records do not support Dr. Datta's suggested limitations on Plaintiff's ability to perform postural activities or walk. As such, the ALJ would have likely discounted the opinion because it was "not accompanied by objective medical evidence [and] is wholly conclusory," and therefore, it would not have changed the ALJ's decision. *Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir.1991). Accordingly, the Appeals Council did not err by failing to remand the case to the ALJ in light of Dr. Datta's opinion.

## B. Whether the RFC Conflicts with the Opinion Evidence before the ALJ

Plaintiff argues that her RFC conflicts with the opinion evidence of Dr. Kimble and Dr. Nielsen. (Doc. 22 at 38.) In response, the Commissioner argues that the RFC is consistent with the opinion evidence and any error in not adopting a limitation set forth in the opinions is harmless. (*Id.* at 42–43.) The Court will address each opinion in turn.

### iii. Dr. Kimble: Non-Examining Reviewing Physician

On June 23, 2015, Dr. Kimble, a non-examining, reviewing, state-agency physician, authored an opinion on Plaintiff's disability. (Tr. 150–153.) She indicated that Plaintiff's spine disorders, sprains and strains, and obesity were severe, but her migraines were not severe. (Tr. 150.) As to Plaintiff's credibility, Dr. Kimble found that Plaintiff's impairments could reasonably produce Plaintiff's subjective complaints and that the medical evidence supported Plaintiff's

subjective complaints. (*Id.*) Plaintiffs limitations included the following: she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; she can stand or walk for 6 hours in an 8 hour work day; she can sit for 6 hours in an 8 hour workday; she has no limitations on her ability to push or pull; she can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch, but can never climb ladders, scaffolds, or crawl. (Tr. 150–151.) Dr. Kimble based Plaintiff's postural limitations on a spine x-ray dated July 24, 2014, that indicated Plaintiff had degenerative disc space narrowing in her lower spine. (Tr. 151.)

Dr. Kimble opined that Plaintiff has the following manipulative limitations: Plaintiff has an unlimited ability for gross manipulation, fine manipulation, and feeling, and a limited ability to reach overhead on her right side. (Tr. 151–152.) Dr. Kimble made this assessment based on Plaintiff's pain and arthritis in her right shoulder. (Tr. 152.) Dr. Kimble also opined that Plaintiff should avoid concentrated exposure to extreme cold, vibrations, hazards such as machinery, and heights. (Tr. 152.) Ultimately, Dr. Kimble opined that Plaintiff was not disabled, despite her limitations and subjective pain complaints, because Plaintiff could return to her past work as actually performed. (Tr. 154–55.)

The ALJ assigned "great weight" to Dr. Kimble's opinion, stating that "it is consistent with the record as a whole including the objective medical findings." (Tr. 34.) The objective medical findings the ALJ discussed included Plaintiff's imaging, treatment records from her primary care physician, and findings by Dr. Nielsen. (Tr. 34–35.) However, as Plaintiff correctly points out, there are some discrepancies between Plaintiff's RFC and Dr. Kimble's opinion.

The Court agrees with Plaintiff's contention that the ALJ "ignore[d] that Dr. Kimble opined Plaintiff's statements about the intensity, persistence, and functionally limiting effects of [her] symptoms were substantiated by the objected medical evidence alone." (Doc. 22 at 39.) However,

any error the ALJ committed by failing to discuss that portion of Dr. Kimble's opinion was harmless. Dr. Kimble determined that Plaintiff could return to her past relevant work (and was thus not disabled) despite finding that Plaintiff's subjective complaints were credible. (Tr. 150, 155.)

Second, Plaintiff correctly points out that, although Dr. Kimble opined that Plaintiff's ability to reach overhead with her right arm was limited, the ALJ determined that Plaintiff could frequently reach above her shoulders with both arms and hands. (Doc. 40; Tr. 24, 151.) The Commissioner argues that any error "in not crediting Dr. Kimble's reaching limitation is harmless" because Plaintiff did not report that her past relevant work required frequent reaching. (Doc. 47–48.) In support, the Commissioner cites to Plaintiff's work history report, which does not indicate that any of her past relevant jobs required frequent (or any) reaching. (Tr. 259–51.) The Commissioner also states that the job descriptions for Plaintiff's past relevant work in the Dictionary of Occupational Titles do not require more than occasional reaching. (Doc. 22 at 48 (citing DOT §§ 210.382-014, 1991 WL 671821 (bookkeeper), 976.687-010, 1991 WL 688627 (school photograph editor), 162.157-038, 1991 WL 647293 (purchasing agent).) Thus, any discrepancy between Dr. Kimble's reaching limitation and Plaintiff's RFC would not affect Plaintiff's ability to do her past relevant work. The Court agrees, and since both errors by the ALJ would not change the outcome of the case, they are deemed harmless errors and the case is not subject to remand. *See Jones v. Commissioner*, 492 F. App'x 70, 73 (11th Cir. 2012) (holding that the AJL's error in including all of the plaintiff's limitations in the hypothetical posed to the ALJ was harmless because it did not affect the outcome of the case).

#### iv. Dr. Nielsen

The Office of Disability Determination referred Plaintiff to Dr. Nielsen for a physical examination that took place on February 17, 2017. (Tr. 1209.) At the physical examination, Dr. Nielsen found that Plaintiff had the following manipulative limitations: she can never lift or carry items between 21 to 100 pounds, she can occasionally lift and carry items between 11 to 20 pounds, and she can frequently lift, but occasionally carry, anything under 10 pounds. (Tr. 1214.) Plaintiff can frequently reach in all directions, handle items, conduct fine finger manipulation, feel, and push and pull with both hands (Tr. 1216).

As for Plaintiff's postural abilities, Dr. Nielsen opined: she can never climb ladders or scaffolds, but can occasionally crawl, and she can frequently climb stairs, balance, stoop, kneel, and crouch; she can sit for 7 hours at a time, stand for 4 hours at a time, and walk for 4 hours at a time; in an 8 hour workday, she can sit for 8 hours or stand for 4 hours and walk for 4 hours; she does not need an assistive device for walking; and she can frequently use both feet. (Tr. 1215–17.)

Dr. Nielsen found that Plaintiff had the following limitations to her work environment: she can never be exposed to unprotected heights, extreme heat or cold, but can occasionally be exposed to moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, vibrations, and frequently operate a motor vehicle; she can handle an environment with a moderate noise level, like an office; she can go shopping, travel without a companion, walk at a reasonable pace on an uneven surface, use public transportation, climb steps at a reasonable pace, feed herself, take care of her own hygiene, and handle paper (Tr. 1218–19.)

Dr. Nielsen also opined that Plaintiff had a fair prognosis but could not understand why her car accident would cause her headaches and herniated discs two weeks after the event. (Tr.

1212.) On the whole, Dr. Nielsen stated that there was nothing objective in his examination that would explain Plaintiff's complaints. (Tr. 1212.)

The ALJ assigned "great weight" to Dr. Nielsen's opinion because he personally evaluated Plaintiff and his opinion was consistent with the record. (Tr. 35.) Plaintiff contends that the RFC was inconsistent with Dr. Nielsen's opinion because the ALJ found that Plaintiff could do "light work" and did not include a limitation about Plaintiff's ability to be exposed to moderate noise levels. (Doc. 22 at 41–42.)

Plaintiff argues that Dr. Nielsen's opinion that she can walk or stand no more than 4 hours total in an 8-hour workday does not support an RFC that Plaintiff can do "light work." (Id. at 40–41.) In other words, Plaintiff contends that she is limited to doing sedentary work, not light work, according to the limitations set forth in Dr. Nielsen's opinion. The Court finds that this argument lacks merit. As Plaintiff correctly explains, the main difference between light and sedentary work is that light work "requires a good deal of walking or standing." (*Id.* at 41 (citing SSR 83-10)) (internal quotations mitted). Light work requires approximately 6 hours of walking and standing in an 8-hour work day. SSR 83-10. Dr. Nielsen opined that Plaintiff could walk for 4 hours and stand for 4 hours in an 8-hour workday, amounting to 8 hours of either walking or standing. (Tr. 1215.) This is more than the 6 hours of standing or walking on and off needed for "light work."

Additionally, any error that the ALJ made by failing to include Plaintiff's noise limitation is harmless. Dr. Nielsen stated that Plaintiff cannot work in an environment with a noise level greater than moderate. (Tr. 1218.) However, none of Plaintiff's past work has a noise level greater than moderate. *See* DOT §§ 210.382-014, 1991 WL 671821 (bookkeeper), 976.687-010, 1991 WL 688627 (school photograph editor), 162.157-038, 1991 WL 647293 (purchasing agent). In fact, her past relevant work as a purchasing agent has a "quiet" noise level. Therefore, the ALJ's failure

to include the moderate noise limitation "was harmless because it did not affect the outcome of [Plaintiff's] case." *Jones*, 492 F. App'x at 73; *see also Sanchez v. Comm'r of Soc. Sec.*, 507 F App'x 855, 856 (11th Cir. 2013) (noting that remanding for express findings would be inappropriate if "doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision" (internal quotation marks omitted)).

Plaintiff also argues that that the ALJ should not have afforded great weight to Dr. Nielsen's opinion because he "admitted his bias" when evaluating Plaintiff's subjective complaints. (Doc. 22 at 41.) Specifically, Plaintiff contends that Dr. Nielsen showed his bias when he stated: "Lending credence to her complaint history, however[,] is the amount of, and persistence of, medical care she obtained for her problem. However, that would be more impressive if she weren't involved in some legal actions." (Tr. 1211.) The Court is not persuaded by Plaintiff's argument. First, Plaintiff offers no authority to support the proposition that a physician's note about a claimant's legal actions amounts to good cause for the ALJ to afford little to no weight to the opinion. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004) ("This Court has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." (citing to *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Furthermore, Dr. Nielsen gave multiple reasons as to why he found Plaintiff's subjective complaints not credible: (1) she was taking only one pain killer a day though she reported constant headaches; (2) she reported balance problems but she did not display any at the physical exam; (3) there is no direct correlation between frontal headaches and Plaintiff's car accident; (4) she did not notice that she herniated two discs in her lower back until

two weeks after the accident; and (5) herniated discs do not generally cause constant pain. (Tr. 1211.) It appears that Plaintiff's legal actions were but one of many factors playing into Dr. Nielsen's determination that her subjective complaints were not credible. Finally, the ALJ does not cite to Dr. Nielsen's comment when determining that Plaintiff's subjective complaints were not credible. (Tr. 18–42.) As the comment about Plaintiff's legal action appears to have had a *de minimis* impact on Dr. Nielsen's and the ALJ's determination of Plaintiff's credibility, the Court does not find that the ALJ erred by affording great weight to Dr. Nielsen's opinion.

V. **CONCLUSION**

Upon consideration of the foregoing, it is **ORDERED AND ADJUDGED** that:

1. The Commissioner's final decision in this case is **AFFIRMED**; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on March 27, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record